# G. A. Fuller, Plff. in Err., v. City of Scranton.

Where the act of May 23, 1874, relating to the passage of ordinances authorizes the corporate power of a city in any particular matter to be exercised by ordinance the requirements of that act must be strictly followed, in order to render action on the part of the corporation valid.

A proposal made in answer to an advertisement published by a city clerk, pursuant to an ordinance of the city council, inviting proposals for the sale of land for city purposes, must be regarded as an original offer to sell, and cannot constitute a contract binding upon the city until it has been accepted by the city authorities by means of an ordinance passed according to law.

(Decided March 15, 1886.)

Error to the Common Pleas of Lackawanna County to review a judgment for defendant in an action of debt. Affirmed.

This case was. submitted to the court below upon the following agreed statement of facts:

1. The city of Scranton was duly incorporated by the act of April 23, 1866, and is a city of the third class, and, by its duly constituted legislative authorities passed the following ordinance:

File of Select Council.

No. 20—1884.

An Ordinance Providing for the Purchase of Ground and the Erection Thereon of City Buildings.

Section 1. *Be it ordained* By the select and common councils of the city of Scranton, and it is hereby ordained by the author-

Cited in Riebie v. Walton, 18 Pa. Co. Ct. 294, holding a borough council without authority to make contract for the construction of a sewer, without first enacting a proper ordinance; in Woodward v. Wilkes Barre, 4 Kulp, 132, holding that only such portion of an ordinance as is certified to the mayor, and as is published and recorded, becomes operative, although the minutes of the council show that the ordinance contains other provisions; in Reich v Ashley, 7 Kulp, 164, holding that an ordinance must, to be valid, be posted in public places, as well as published in a newspaper; in Grier v. Homestead, 6 Pa. Super. Ct. 549, 28 Pittsb. L. J. N. S. 361, 42 W. N. C. 18, holding that, while an ordinance must be published and advertised, the ordinance book is prima facie evidence of the validity of the ordinance; distinguished in Ephrata Water Co. v. Ephrata, 16 Pa. Super. Ct. 488, 18 Lanc. L. Rev. 484, on the ground that, at the time of the passage of the ordinance in question, it was not necessary to submit it to the burgess for his approval or disapproval.

ity of the same, that a piece or parcel of ground shall be purchased within the limits of the 8th, 9th, or 16th wards, and city buildings be erected thereon; said ground to be not less. than 50 feet in front and not less than 100 feet in depth; and the city clerk shall, without delay, advertise for proposals to sell to the city such a piece or parcel of ground.

Section 2. Immediately upon the acceptance by the city of any proposal to sell ground as aforesaid, the city clerk shall advertise for plans, etc., for a city building; and, upon the adoption or acceptance of any plan, he shall advertise for bids. for the erection of city buildings in accordance therewith.

Passed select council October 28, 1884.

J. B. Farries, President.

Passed common council December 22, 1884.

E. J. Duhigg, President.

Approved January 5, 1885.

F. A. Beamish, Mayor.

2. Immediately upon the passage of the above ordinance, to wit, on the 12th day of January, 1885, the city clerk caused to be published the following notice:

Sealed proposals will be received at the office of the city clerk, Scranton, Pa., until 7 o'clock P. M., Thursday, January 22, 1885, to sell to the city of Scranton a piece or parcel of ground. Said ground to be within the limits of the 8th, 9th or 16th ward of said city, and to be not less than 50 feet in front, and not less than 100 feet in depth. The city reserves the right. to reject any or all bids.              M. T. Lavelle, City Clerk.

Scranton, January 12, 1885.

3. In response to the above invitation, several proposals were. sent in, the following being one of the number:

I hereby offer to sell to the city of Scranton, for a site on which to erect a city building, for city offices, council chamber, etc., that certain lot or parcel of land situated in the 9th ward, on the northerly side of Adams avenue, 134 feet east of Lackawanna avenue; the same being 100 feet in front on Adams avenue and 132 feet deep (100x132), with the privilege of ten (10) feet in front of the front line, and bounded on

the northerly side by a public alley, on the westerly side by an alley to be opened, and on the southerly side or front by Adams avenue, designated on the annexed map, as No. 1, for the sum of $22,500.          G. A. Fuller.

4. The proposals were referred by the councils to the proper committees, with instructions to have proposals printed for use of councils, which committee reported as follows:

Scranton, Pa., February 11, 1885.

Mr. President: Your committee on public buildings of select council, to whom were referred proposals to furnish the city with a lot of ground on which to erect public buildings, beg leave to report that, after careful consideration, we have concluded that the first proposal of G. A. Fuller is the most suitable for the purpose, it being that certain lot or parcel of land situated in the 9th ward, on the northeasterly side of Adams avenue, 134 feet east from Lackawanna avenue; the same being 100 feet in front on Adams avenue and 132 feet deep, with privileges, alleys, etc., as set forth on accompanying map. Your committee therefore recommend that the aforesaid proposals be accepted at price and conditions specified in proposal, and the city solicitor instructed to see that transfer is properly made; also that titles are perfect, etc.

Approved the 4th day of March, A. D. 1885.

F. A. Beamish, Mayor.

On the back of which is indorsed:

Within report was read in selecet council February 12, 1885, and adopted.          M. T. Lavelle, City Clerk.

Within report was read in common council February 23, 1885, and action of select council concurred in.

A. Kiefer, Clerk.

The committee failed to comply with their instructions to have the proposals printed for the use of councils.

5. After the approval of the report of the committee accepting the proposal of Mr. Fuller, the city solicitor examined the brief of title to the property in question, submitted to him b·

Mr. Fuller, and, after examining and approving the title, the deed of the property was delivered to him on the 14th day of March, A. D. 1885, and thereupon the solicitor reported to councils as follows, on the 16th of March, 1885:

Gentlemen of Councils:

Mr. Fuller has left with me a deed to the city for the lot recently purchased, and I have examined the title and find it without encumbrance. In order to save interest on the purchase money, payment should be made, and the matter closed up as soon as possible. I expect the balance due from Mr. Tripp, $16,000, will be paid April 1, and this, with the $4,000 already paid, if devoted to this purpose, would nearly complete the payment to Mr. Fuller.

I. H. Burns, City Solicitor.

6. No official notification of the action of councils on Mr. Fuller's proposal was given to Mr. Fuller or the city solicitor before the deed was handed to the city solicitor or before the rescinding resolution hereinafter referred to was adopted by councils, but Mr. Fuller was present at the meeting of councils when the proposal was accepted and the city solicitor had actual notice of the same.

7. The following resolution was adopted by councils:

Resolved by the common council of the city of Scranton, the select council concurring, that the action of councils in accepting bid of G. A. Fuller for sale to the city of lot on Adams avenue, as a site for city buildings, be and the same is hereby rescinded; and the city clerk is hereby instructed to re-advertise for proposals to sell to the city a lot for suitable buildings for city hall and offices.

Approved, select council, April 1, 1885.

M. T. Lavelle, City Clerk.

Approved, Common Council, March 30, 1885.

A. Kiefer, Clerk.

8. The mayor, on the 11th of April, 1885, returned the above resolution without his approval.

9. On the 4th day of May, 1885, G. A. Fuller demanded payment for the above-described property, which payment has not been made.

10. The following resolution was adopted by councils:

Resolved by the common council of the city of Scranton, the select council concurring, that the city solicitor be and he is hereby instructed to return to Mr. G. A. Fuller the deed of lot on Adams avenue which is alleged to be in his possession.

Approved May 11, 1885.

A. Kiefer, Clerk Common Council.

Approved by select council May 12, 1885.

M. T. Lavelle, City Clerk.

Approved the 16th day of May, 1885.

F. A. Beamish, Mayor.

If the court be of the opinion that there was a sale to the city, of the property in question, and that the city is bound to pay the price stipulated in the proposal, then judgment is to be entered for plaintiff for the sum of $22,500, with interest from the day of sale; otherwise, judgment to be entered for defendant. Costs to abide the event and to be paid by the party against whom final judgment is entered.

All the acts of assembly relating to the city of Scranton, and to cities of the third class, so far as they are pertinent, are made a part of this case, and may be referred to by either party.

Either party to be entitled to a writ of error.

The following opinion was delivered in the court below by RICE, P. J.:

As we understand this case, the contention of the plaintiff is that his proposal to sell the lot in question being in writing, the contract became complete *eo instanti* the report of the committee recommending the acceptance of his offer was adopted by the councils and approved by the mayor.

The defendant's contention is that the act was of such a nature as could only be done by ordinance, and as the requirements of the act of May 23, 1874 (P. L. 231, Purd. Dig. 1214, Pl. 6), relating to the passage of ordinances, were not complied with, it was invalid and did not bind the city.

"Resolution is only a less solemn or less usual form of an ordinance. It is an ordinance still if it is anything, intended to regulate any of the affairs of the corporation. If the word 'ordinance' in the act of assembly does not include such resolutions, the law that requires ordinances to be submitted to the

mayor for his approval is of no force at all, because it allows
its substantial purpose to be defeated by giving to ordinances
the form of resolutions. . . . Ordinance, then, is the generic
term for acts of council affecting the affairs of the corporation;
and we can make no distinction between them founded on the
difference of degree in which they affect those affairs." Kepner
v. Com. 40 Pa. 124.

In Sower v. Philadelphia, 35 Pa. 231, it was held that a
joint resolution of councils directing the opening of a street
laid down on one of the public plans of the city is of the same
force as an ordinance for that purpose. READ, J., said: "It
is a legislative act, a law, and it matters not whether it be
called a joint resolution or an ordinance."

An act provided that the laws, ordinances, regulations, and
constitutions passed by the councils of Allegheny which were
not published and recorded should be null and void. Councils
passed a resolution to revoke a contract for grading streets, and
to enter into a new contract on different terms; the resolution
was not published or recorded. Held, that the resolution was
within the meaning of the act and therefore inoperative. See
opinion of READ, J., in Marshall v. Com. 59 Pa. 455.

In Waln v. Philadelphia, 99 Pa. 330–337, the court below
refused to receive in evidence a resolution of councils instruct-
ing the commissioner of highways not to proceed with the work
of constructing a sewer, regularly ordained, until the property
holders could be heard in opposition to the same.

The supreme court sustained this ruling and said: "But
according to the case of Sower v. Philadelphia, 35 Pa. 231, a
resolution of councils is but another name for an ordinance
which, in order to have the force of law, must be signed by the
mayor, published, and recorded. As, however, the paper offered
in evidence was wanting in all these requirements it was prop-
erly rejected." In the case of Parrish v. Wilkesbarre, 2 Kulp,
182–194, it was held that a resolution providing for the issue
and sale of sewer bonds (the sewer ordinance being entirely reg-
ular) and for the redemption of the same was, in effect, an
ordinance, and, under the charter of the city, must be published
in order to give it validity.

None of the foregoing cases, it is true, construe the act of
1874. They are nevertheless pertinent and authoritative, in so
far as they define the meaning and scope of the term "ordi-
nance."

Now, we think it clear that the purchase of a lot for city buildings involves legislative action of a very high character; and, if we had nothing to control our decision but § 3 and the 1st paragraph of § 4 of the act of 1874, we would have no hesitancy in concluding from the cases cited that the contract must be based on an ordinance authorizing it, passed in the way presented in said sections. But the third clause of § 4 provided that "every legislative act of the councils shall be by resolutions or ordinances;" and, as the act does not provide the method of passing resolutions, we have had some difficulty in concluding how to construe this clause.

What legislative acts may be by resolution, and what acts must be by ordinance? The fact that the thing to be done is a legislative act does not seem to be the conclusive test. But is it a matter left to the option of the councils, and may they avoid the requirements of the sections relating to the passage of ordinances by adopting the form of a resolution? It would be unreasonable so to conclude, for the requirements include matters of great substance, and not merely matters of form.

Questions suggest themselves requiring more thorough consideration than we have been able to give. Of this much, however, we are convinced, that where the act authorizes the corporate power of the city in any particular matter to be exercised by ordinance the requirements of the law as to the passage of ordinances must be followed. Among the other corporate powers of the city, it is authorized and empowered to enact ordinances for the following purposes, § 20, act of 1874 (Purdon's Digest, 1218, pl. 30): "To provide for the erection and government of any and all useful and necessary buildings for the official use of the city." Purdon's Digest, 1219, pl. 43.

It is from this section that the corporate authorities derive their power in the present case, and as it is by express language a power to enact ordinances, it requires no strained construction of the law to say that § 3 and the 1st clause of § 4 apply where the power thus conferred is to be exercised.

But it may be said that the intendment of the law was carried out by the passage in due form of ordinance approved January 5, 1885, that this then became the law of the corporation; and all that was required was the entering into a contract pursuant to the ordinance, which might be done by vote or resolution.

This might be so if nothing remained to do but to enter into

a contract upon certain conditions and terms prescribed in the
ordinance. But it is to be observed that there was nothing in the
ordinance or in the reference to the committee binding the city
to acceptance of any of the proposals. Even after the report of
the committee, the whole matter was still open. Whether the
city should accept the plaintiff's terms, still more whether it
should buy the lot at all, were matters still resting in the dis-
cretion of the corporate authorities. They were committed
neither to any particular thing, nor to any general line of action
upon the proposals before them. The plaintiff's proposals then,
may be regarded as an original offer to sell the piece of land in
question for a certain price, which required acceptance by the
city, acting through its corporate officers or its lawfully author-
ized agent, to complete the contract.

In this view of the case we cannot escape the conclusion that
such acceptance involved, not merely the completion of a con-
tract, but the exercise of the legislative powers of the councils,
notwithstanding the ordinance of January 5, 1885. The only
evidence of such action of the councils on which to sustain the
plaintiff's claim consists of the following indorsements on the
report of the committee.

Within report was read in select council February 12, 1885,
and adopted.                        'M. T. Lavelle, City Clerk.

This report was read in common council, February 23, 1885,
and action of select council concurred in.

                                        A. Kiefer, Clerk.

The case stated does not otherwise show what action was
taken by the councils, but, accepting these indorsements for all
that can be claimed for them, it is not to be inferred therefrom
that any such course was pursued as is contemplated by §§ 3
and 4 of the act of 1874. To say nothing of the want of evi-
dence that the formalities there prescribed were observed, we
conclude that the action of councils to be inferred from the in-
dorsements on the report of the committee is insufficient to es-
tablish a completed and binding contract for the purchase of the
lot in question.

If the case stated averred that an ordinance was passed for
the purchase of the lot, we might possibly be justified in pre-

suming, in the absence of evidence to the contrary, that it had been legally passed. But be that as it may, there is no such allegation; therefore, if we are correct in our conclusion that these sections apply to legislative action of this nature, it was incumbent on the plaintiff to show that, although a formal ordinance was not passed, all of the substantial requirements of the sections were complied with. The sections provide that no ordinance shall be passed except by bill, and that on the final passage of every bill the vote shall be taken by yeas and nays, and the names of the persons voting for and against the same be entered on the journal, and a majority of the members elected to each branch be recorded thereon as voting in its favor. It cannot be doubted that this is matter of substance, and not of mere form; in the present case it was an essential of a valid contract, without which the plaintiff must fail in his action.

And now, January 16, 1886, in accordance with the stipulations of the case stated judgment is entered in favor of the defendant.

*Jessup & Hand* for plaintiff in error.

*I. H. Burns* and *H. M. Edwards* for defendant in error.

PER CURIAM:
The reasons for the conclusion at which the court arrived are well declared in the opinion of the learned judge in entering judgment on the case stated.
On that opinion the judgment is affirmed.